UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

THOMAS HORYCZUN,

              Plaintiff,

      v.

MILLER ENVIRONMENTAL GROUP,
INC. and GenNX360 PARTNERS III, L.P.,

              Defendants.

**MEMORANDUM & ORDER**
22-CV-162 (HG) (SIL)

**HECTOR GONZALEZ**, United States District Judge:

Plaintiff Thomas Horyczun ("Plaintiff") brings this action against Defendants Miller Environmental Group Inc. and GenNx360 Capital Partners III, L.P. (collectively, "Defendants") for alleged violations of: (i) the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*; and (ii) the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*. Presently before the Court is Defendant GenNx360 Partners III, L.P.'s ("GNX") motion to dismiss the Amended Complaint ("Motion"), Plaintiff's opposition, and Defendant GNX's Reply. ECF Nos. 12, 13, 14. For the reasons set forth below, Defendant GNX's Motion is denied.

## BACKGROUND

Plaintiff alleges that he was hired by Defendant Miller Environmental Group Inc. ("MEG") as MEG's Chief Financial Officer ("CFO") in 2013. ECF No. 8 ¶ 10. In March 2019, while employed as MEG's CFO, MEG was sold to GNX. *Id.* ¶ 12.[1] According to the Amended Complaint, after the sale of MEG to GNX, Plaintiff participated in both conference and private

---

[1] Though neither Plaintiff nor Defendant GNX describe the relationship between MEG and GNX with specificity, it is the Court's understanding that GNX is a private equity firm and MEG is one of GNX's portfolio companies. *See* ECF No. 12-1 at 2 n.3.

calls with a GNX partner, "who oversaw and managed MEG . . . to discuss MEG" as well as monthly Board meetings with employees from GNX. *Id.* ¶¶ 17–18. Plaintiff further alleges that in August 2019, Defendants made the decision to provide Plaintiff with Class P Units in GenNx Miller Holding Company, LLC, the paperwork for which he returned to Defendant GNX. *Id.* ¶¶ 15–16.

In late December 2019, MEG acquired Environmental Product & Services of Vermont, Inc. ("EPS") and in March 2020, Plaintiff was informed that "a new CFO with private equity experience in mergers and acquisitions was hired to replace him," a decision which Plaintiff states was "made and/or approved" by GNX. *Id.* ¶¶ 20–21. Plaintiff was then given the role of Controller, reporting to the new CFO of MEG, Kelly Mulvey. *Id.* at ¶ 21. Three additional accounting professionals were also allegedly hired in April and May 2020 "at the direction and/or approval of GNX." *Id.* ¶ 22.

Plaintiff alleges that until the end of April 2020, he had not been informed of any work performance issues. *Id*. ¶ 24. On April 30, 2020, Plaintiff informed his CFO, Kelly Mulvey, that he had been diagnosed with cancer and his treatment would necessitate his being absent from work. *Id.* ¶¶ 24–25. In mid-May 2020, Plaintiff met with MEG's Director of Human Resources regarding his leave and covered absences under the FMLA. *Id.* ¶ 27. On May 28, 2020, Plaintiff informed MEG's CFO that he planned to start treatment on June 22, 2020. *Id.* ¶ 29. During the first week of June 2020, Plaintiff informed MEG's CFO and Director of Human Resources that his screening tests were scheduled the week of June 8, 2020, and he was subsequently out of the office on June 8, 2020, and June 12, 2020. *Id*. ¶¶ 31–32. Plaintiff alleges that his employment was terminated "by the Defendants in retaliation for/interference with the exercise of his rights . . . [under the FMLA and the ADA]" on June 15, 2020, the day after he submitted a draft of

MEG's financial reports to MEG's CFO. *Id*. ¶¶ 1, 33.  Plaintiff further alleges that he was told the decision to terminate him "had been made by GNX six months earlier." *Id.* ¶¶ 1, 33–34.

On January 11, 2022, Plaintiff filed his initial Complaint in this case, ECF No. 1, and on April 14, 2022, Plaintiff filed his Amended Complaint.  ECF No. 8.  On April 29, 2022, Defendant MEG filed its answer and Defendant GNX filed a letter requesting a pre-motion conference to dismiss the Amended Complaint.  On June 17, 2022, Defendant GNX filed the instant Motion pursuant to Federal Rule of Civil Procedure 12(b)(6), principally contending that Plaintiff's Amended Complaint failed to plausibly allege that Defendant GNX is Plaintiff's "employer" under the FMLA and the ADA.  *See* ECF No. 12-1.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "When determining the sufficiency of plaintiffs' claim for Rule 12(b)(6) purposes, consideration is limited to the factual allegations in plaintiffs' amended complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Tech., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).  The Court must draw all reasonable inferences in favor of the non-moving party, however, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" to state a plausible claim. *Iqbal*, 556 U.S. at 678.

## DISCUSSION

1. **Plaintiff's FMLA Claims**

The FMLA "creates a private right of action to seek both equitable relief and money damages" against an employer. *See* 29 C.F.R. § 825.104; *Shukla v. Viacom Inc.*, No. 18-cv-3522, 2019 WL 1932568, at *8 (S.D.N.Y. May 1, 2018). To make out a *prima facie* claim under the FMLA, Plaintiff must plead facts plausibly alleging that Defendant GNX was his employer under the FMLA. Under the FMLA, the legal entity that employs the employee—here, MEG— is deemed to be the employer. *See* 29 C.F.R. § 825.104(c). "Corporate entities with an ownership interest in the immediate employer [such as GNX], are considered 'separate employer[s]' unless they meet the 'integrated employer test' or the 'joint employment test.'" *Shukla*, 2019 WL 1932568, at *8 (quoting 29 C.F.R. § 825.104(c)(1)). Furthermore, similarly to the definition of employer in section 3(d) of the Fair Labor Standards Act ("FLSA"), an employer also includes "any person who acts directly or indirectly in the interest of an employer to any of the employer's employees." 29 C.F.R. § 825.104(d).

   A. *Integrated Employer Test*

To establish the integrated employer test, the court must consider the following factors: (i) common management; (ii) interrelation between operations; (iii) centralized control of labor relations; and (iv) degree of common ownership/financial control. *See* 29 C.F.R. § 825.104(c)(2). "A determination of whether or not separate entities are an integrated employer is not determined by the application of any single criterion, but rather the entire relationship is to be reviewed in its totality." *Id.* However, courts in this Circuit have considered "centralized control of labor relations" to be the central concern. *See Brown v. Daikin Am. Inc.*, 756 F.3d 219, 227 (2d Cir. 2014) (finding that no one factor is determinative, but control of labor relations is the

4

central concern).[2]  To meet the integrated employer test, "a plaintiff need not allege that the parent exercises total control or ultimate authority over hiring decisions, so long as he alleges that there is an amount of participation . . . that is sufficient and necessary to the total employment process." *Id.* at 227 (citation and internal quotation marks omitted).

Here, Plaintiff makes allegations suggesting that Defendant GNX had centralized control of labor relations, specifically, hiring and firing:  (i) while he was employed as CFO, GNX approved the hiring of a new CFO to replace him, ECF No. 8 ¶¶ 20–21; (ii) additional accounting colleagues were hired at the direction of and/or approved by GNX, *id.* ¶ 22; and (iii) the decision to terminate Plaintiff was ultimately made by GNX, *id.* ¶ 33.  Plaintiff also alleges that Defendant GNX owns MEG and was involved in some capacity in determining Plaintiff's compensation by giving him "Class P Units in GenNx Miller Holding Company, LLC," from which, if true, the Court can infer common ownership and financial control.  *Id.* ¶¶ 12, 15.

The allegations that Defendant GNX had the authority to "hire and fire" MEG employees are particularly instructive and suggest that Plaintiff has made a *prima facie* case to establish employer liability under the FLMA.  *See Draskovic v. Oneata Assocs., LLC*, No. 17-cv-5085, 2019 WL 783033, at *7 (E.D.N.Y. Feb. 21, 2019) (finding that allegations that the defendant had the power to fire Plaintiff supported employer liability under the FLSA standard, which mirrors the FMLA); *see also Johnson v. A.P. Prods., Ltd.*, 934 F. Supp. 625, 629 (S.D.N.Y. 1996) ("In determining whether, as a matter of economic reality, an entity is an employer . . . courts focus on whether the alleged employer has some degree of control over the terms and conditions of employment[, including] . . . whether the alleged employer: (1) had the power to hire and fire the

---

[2]  The integrated employer test as outlined in the FMLA is identical to the integrated enterprise liability test in the context of Title VII of the Civil Rights Act of 1964 ("Title VII") as discussed in *Brown*.  *See Shukla*, 2019 WL 1932568, at *8.

5

employees; (2) supervised or controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records.") (citation and internal quotation marks omitted).  Accordingly, because Plaintiff has pleaded facts that, if true, demonstrate that Defendant GNX had centralized control of labor relations, the Court concludes that he has plausibly alleged that Defendant GNX was his employer for the purposes of his FMLA claim under the integrated employer test.  *See Brown*, 756 F.3d at 226 ("Whether two related entities are sufficiently integrated to be treated as a single [or integrated] employer is generally a question of fact not suitable to resolution on a motion to dismiss.").

Defendant argues that Plaintiff's allegations concerning GNX are both speculative and "self-defeating" because Defendant alleges that GNX decided to terminate him before MEG was made aware of Plaintiff's cancer diagnosis.  *See* ECF No. 12-1 at 7–9.  However, Plaintiff does not suggest that GNX did not *know* of his cancer diagnosis but, rather, that GNX deciding to terminate him "six months prior" was the explanation MEG gave him for why he was let go.  Because Plaintiff was terminated from MEG by Defendant GNX six weeks after he initially disclosed his diagnosis to MEG, it is not unreasonable for the Court to infer that, if true, MEG communicated this to Defendant GNX and he was terminated because of it.  *See Clark v. Jewish Childcare Ass'n, Inc.*, 96 F. Supp. 3d 237, 262 (S.D.N.Y. 2015) (holding that the close proximity between plaintiff's return from disability leave and her termination satisfies the causal element to establish a *prima facie* case of retaliation).

    B.  *Joint Employer Test*

If two or more businesses exercise some control over the work or working conditions of the employee, they may be joint employers under the FMLA.  *See* 29 C.F.R. § 825.106.  "[A] joint employment relationship generally will be considered to exist in cases where[: ] (1) there is

6

an arrangement between employers to share an employee's services or to interchange employees; (2) one employer acts directly or indirectly in the interest of the other employer in relation to the employee; or (3) the employers are not completely disassociated with respect to the employee's employment and may be deemed to share control of the employee, directly or indirectly, because one employer controls, is controlled by, or is under common control with the other employer." *Shukla*, 2019 WL 1932568, at \*8 (citation and internal quotation marks omitted). As discussed above, Plaintiff has alleged sufficient facts to suggest that Defendant GNX controlled MEG on employment matters and "directed [MEG's] hiring or firing practices." *Id.*; *see also NLRB v. Solid Waste Servs., Inc.*, 38 F.3d 93, 94 (2d Cir. 1994) ("A joint employer relationship may be found to exist where there is sufficient evidence that the respondent had immediate control over the other company's employees . . . . Relevant factors include commonality of hiring, firing, discipline, pay, insurance, records, and supervision"). The Court finds that Plaintiff has also pled sufficient facts to suggest liability under the alternative joint employer test.

   **2. Plaintiff's ADA Claims**

To make out a *prima facie* case of disability discrimination, a plaintiff must show that: "(1) the employer is subject to the ADA; (2) the plaintiff was a person with a disability within the meaning of the ADA; (3) the plaintiff was otherwise qualified to perform the essential functions of her job, with or without reasonable accommodation; and (4) the plaintiff suffered an adverse employment action because of his disability." *Morris v. Town of Islip*, No. 12-cv-2984, 2014 WL 4700227, at \*8 (E.D.N.Y. Sept. 22, 2014).

Under the ADA, as under Title VII, "a joint employer relationship may be found to exist where there is sufficient evidence that the defendant had immediate control over the other company's employees. Relevant factors include the commonality of hiring, firing, discipline,

7

pay, insurance, records and supervision." *Valentine v. Brain & Spine Surgeons of N.Y., P.C.*, No. 17-cv-2275, 2018 WL 1871175, at *4 (S.D.N.Y. Apr. 16, 2018) (internal quotation marks omitted).  For the reasons discussed above, Plaintiff's complaint alleges facts sufficient to conclude that Defendant GNX was his employer.

## **CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss is DENIED.

SO ORDERED.

>*/s/ Hector Gonzalez*
>HECTOR GONZALEZ
>United States District Judge

Dated: Brooklyn, New York
September 6, 2022